**Gaynell GRIER, et al., individually and on behalf of others similarly situated, Plaintiffs,**

v.

**M.D. GOETZ, Jr., Commissioner, Tennessee Department of Finance and Administration, et al., Defendants,**

and

**Tennessee Association of Health Maintenance Organizations, et al., Defendants–Intervenors,**

**Sanford Bloch, Mark Levine, Tim Jones, and William Duncan, and Mary Kathryn Duncan, by their next friend, Robert Duncan, Plaintiffs–Intervenors.**

**No. 3:79–3107.**

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 9, 2005.

See also, 262 F.3d 559.

Dorothy M. Siemon, Franco Allocco Munoz, Sarah Lenz Lock, Dorothy M. Siemon, A.A.R.P. Foundation Litigation, Washington, DC, Erin E. Oshiro, Welfare Law Center, Petra T. Tasheff, Erin E. Oshiro, Welfare Law Center, New York City, Everette L. Doffermyre, Kimberly Jean Johnson, Ralph I. Knowles, Jr., Doffermyre, Shields, Canfield, Knowles & Devine, Atlanta, GA, George Gordon Bonnyman, Jr., Joseph Michael Engle, Lenny Lee Croce, Michele M. Johnson, Lisa J. D'Souza, Shawn L. Caster, Russell James Overby, Tennessee Justice Center, Inc., George Edward Barrett, Edmund L. Carey, Jr., Gerald E. Martin, Barrett, Johnston & Parsley, Nashville, TN, Martha Rose Lionberger, Legal Services of Tennessee, Oak Ridge, TN, Gloria Samuels, Legal Services of Upper East TN, Johnson City, TN, for Plaintiffs/Plaintiffs–Intervenors.

Charles J. Cooper, Derek L. Shaffer, Kathryn L. Wheelbarger, Michael W. Kirk, Nicole J. Moss, Cooper & Kirk, Charles A. Miller, Covington & Burling, Washington, DC, Linda A. Ross, Steven B. Carter, Sue A. Sheldon, Jennifer Helton Hann, John W. Dalton, Nicholas G. Aemisegger, Jr., Tennessee Attorney General's Office, Ronald G. Harris, Aubrey B. Harwell, Jr., Philip D. Irwin, Neal & Harwell, William W. Leech, Butler & Associates, Katherine Anne Brown, Willis & Knight, Michael L. Roden, Office of the United States Attorney, Quenton I. White, Nashville, TN, for Defendants.

Gary C. Shockley, John S. Hicks, Lewis R. Donelson, Lea C. Owen, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC,

William Matthew Barrick, William Beesley Hubbard, Hubbard, Berry, Doughty, Harris & Barrick, PLLC, Blakeley D. Matthews, Cornelius & Collins, LLP, Margaret Mary Huff, Nashville, TN, John M. Murdock, Epstein, Becker & Green, Washington, DC, for Defendants–Intervenors.

Bobby D. Green, Ashland City, TN, pro se.

Lois Vaughan, Interlachen, FL, pro se.

## ORDER

NIXON, Senior District Judge.

Pending before the Court is Defendants' Motion to Alter or Amend Revised Order (Doc. No. 1258), to which Plaintiffs–Intervenors have responded in support (Doc. No. 1259) and Plaintiffs have responded in opposition (Doc. No. 1260).

The State has moved, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, for an order altering or amending subparagraphs (iv)(4) and (xii) of the Revised Order entered on August 3, 2005 (Doc. No. 1256). The State argues that implementation of subparagraphs (iv)(4) and (xii) of the Revised Order present "major practical problems," jeopardize the State's ability to use "soft" prescription limits, and prevent the State from "moving forward with the Memorandum of Understanding ("MOU") and preserving coverage for the 97,000 Medically Needy beneficiaries, including pharmacy coverage."

■ This Court has considerable discretion to grant or deny a Rule 59(e) motion. *See Huff v. Metro. Life Ins. Co.,* 675 F.2d 119, 122 (6th Cir.1982). To prevail on such a motion, a party must show "clear error in the court's prior decision or ... put forth an intervening controlling decision or newly discovered evidence not previously available." *Al–Sadoon v. FISI Madison Financial Corp.,* 188 F.Supp.2d 899, 901–902 (M.D.Tenn.2002). Such a motion may

also be granted to "prevent manifest injustice." *Id.* at 901, *quoting GenCorp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999). However, it is not enough for "a party simply to reargue its prior position in the hope that the court will change its mind." *Al–Sadoon,* 188 F.Supp.2d at 902; *see also White v. N.H. Dep't. of Employment Sec. et al.,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

■ The Court finds that modification of subparagraph (iv)(4) of the Revised Order is warranted to prevent manifest injustice by clarifying the Court's ruling and to make it consistent with the other provisions of the Revised Order relating to prior authorization. The Court finds that modification of subparagraph (xii) of the Revised Order is not warranted because the State has not shown clear error in the Court's previous decision, an intervening controlling decision, newly discovered evidence not previously available or manifest injustice. Accordingly, the Court hereby **ORDERS:**

(1) Subparagraph (iv)(4) of the Revised Order is modified as follows:

(iv)(4) A valid appeal may be taken where no prior authorization has been sought for a drug requiring such authorization in order to be treated as a covered service (and therefore no prior authorization request has been denied). This ruling does not preclude the State from creating an administrative process to address requests by enrollees with a prescription, but without the requisite prior authorization, including, but not limited to: (a) performing the prior authorization analysis prior to processing the appeal, consistent with subparagraph (ii) of the Revised Order, (b) requiring the enrollee to request his or her treating physician to obtain prior authorization, (c) assisting the enrollee in

obtaining access to a physician who can obtain the required prior authorization in the event an enrollee is unable to reach his or her treating physician or does not have access to a physician, or (d) assisting the enrollee in any other manner to obtain the required prior authorization. The State may require an enrollee to exhaust this administrative process *before* the enrollee is notified of its right to appeal and *before* the enrollee may appeal, provided, however, that the State performs the administrative process with reasonable promptness. *See* 42 C.F.R. § 431.220(a). The Court recommends that the State, upon consultation with the other parties to this action, create guidelines for what constitutes "reasonable promptness" in this context;

■ The Revised Order held that a provider is an agent of the State. *See Tenn. Ass'n. of Health Maint. Orgs., Inc. ("TAHMO") v. Grier*, 262 F.3d 559, 565 (6th Cir.2001). *TAHMO* held that MCOs, as contractors of the TennCare program, are responsible for administration of the TennCare program and are therefore agents of the State. *Id.* Providers, in turn, are subcontractors of the TennCare program and are responsible for providing care in accordance with the TennCare program. *See* Long Testimony, Tr. Vol. V–D at 1147:3–7. Accordingly, providers are also agents of the State. A provider's failure to request prior authorization constitutes denial of prior authorization, which denial is appealable. The State has not shown, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, that this interpretation of the law is clear error. Accordingly, the first sentence of subparagraph (iv)(4) the Revised Order shall not be modified.

While a provider's failure to obtain prior authorization gives rise to a valid appeal,

this Court, cognizant of the difficulties the administration of such appeals would create for the State, permitted the State to require enrollees to exhaust an administrative process prior to commencing an appeal. The Court did not foresee that the mere filing of the appeal, notwithstanding the fact that such appeal would be tolled to permit exhaustion of the administrative process, would create the problems the State describes, and render ineffective the regime of prior authorization. Accordingly, the Court clarifies its previous ruling to permit the State to implement, and require an enrollee to exhaust, an administrative process *prior to* filing an appeal.

The Court envisions the following process. When the enrollee is notified that the physician has not obtained prior authorization for a drug requiring such authorization (presumably at a pharmacy), the enrollee should be notified in writing that the enrollee should contact his or her treating physician to request the physician to obtain the prior authorization. If both the enrollee and the pharmacist are unable to contact the physician or the physician does not obtain the prior authorization, the notice should include information as to how to contact (preferably by telephone) the TennCare Bureau or the State's Pharmacy Benefits Manager. Once the enrollee contacts the TennCare Bureau or Pharmacy Benefits Manager, the latter should attempt to elicit information from the enrollee to determine if a prior authorization decision can be made without contacting the physician or contact the physician to obtain the prior authorization. *Once this process is exhausted,* and the physician has not requested prior authorization, the enrollee should be notified of his or her right to appeal and/or be afforded the right to see another physician.

The process outlined above should be sufficient to elicit a response from a major-

ity of physicians, yet it protects the enrollees right to appeal in the minority of cases in which physicians are unresponsive. The practical process the Court envisions above is not binding on the State, as the Court does not wish to impose a practical solution that is not feasible in the "real world." The Court notes that the State's current motion stems in part from the Court's previous attempt to delve into the minutiae of practical solutions, and again requests the parties to make a *serious* effort to communicate in finding reasonable, practical solutions to the Court's broader rulings.

Finally, the Court notes the parties' disagreement as to the meaning of "reasonable promptness." The Court declines to rule on what constitutes "reasonable promptness" in this context without reviewing the administrative process the State implements. However, the Court notes that the 2003 Revised Consent Decree (Modified), as modified by the Revised Order, acknowledges that it may take up to three days for a physician to obtain prior authorization. *See* ¶ C(14)(e). Similarly, the Centers for Medicare and Medicaid Services require the State to treat prior authorization requests within a 24–hour period. *See* DX 207 (Att. F at iii) (describing procedures for appealing denials of prior authorization). The Court has not been presented with enough evidence to determine why a request for prior authorization received from a provider should be treated differently from one received from an enrollee, but on the evidence presented the Court is not entirely convinced that the two requests should be treated differently. Accordingly, reasonable promptness in this context may constitute, at a minimum, four days.

(2) The Court finds that modification of subparagraph (xii) of the Revised Order is not warranted because the State has not shown clear error in the Court's previous decision, an intervening controlling decision, newly discovered evidence not previously available or manifest injustice. *Al–Sadoon*, 188 F.Supp.2d at 901–02. First, the Court finds that the State's proposed revision of Paragraph C(7)(b) of the 2003 Revised Consent Decree (Modified) is inconsistent with this Court's ruling that providers are agents of the State. Providers, as agents of the State, are bound by the rules of the TennCare program and must provide the State with an enrollee's medical records in a timely fashion when the State requests such records. Second, in subparagraph (xvi)(1) of the Revised Order, this Court specifically permitted the State to modify the time limitations in Paragraph C(16) of the 2003 Revised Consent Decree (Modified) to ensure sufficient time to obtain the enrollees' medical records. The Court simply limited the State to the requirements of 42 C.F.R. § 431.244(f), which require TennCare to take final administrative action within 90 days or less in the event of an expedited appeal. The State, Managed Care Contractors and providers must comply with federal regulations in performing their responsibilities under the TennCare program. Third, the Court is not convinced this revision will garner such significant savings that it impedes the State's ability to make a decision regarding the Memorandum of Understanding. The State conservatively estimated that it would save $2,020,500 from revisions to the appeals process. *See* DX 213. This Court has already granted the State many of its requested modifications with regards to the appeals process. Thus, the State is already in a position to achieve its conservative cost-saving estimate. Most significantly, the Court has granted most of the State's pharmacy requests, which will garner significant cost-savings. Thus, the Court orders the State, upon consultation

with the other parties to this action and in accordance with this Order, to submit its proposal for approval of such modification to this Court at a time to be determined by this Court subsequent to the issuance of the Memorandum Order.

This ruling will be followed by a Memorandum Order explaining the Court's reasoning.

It is so ORDERED.